## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BROWN INV. ADVISORY & TR. CO.,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-19-2332** |
| **DAVID T. ALLEN** *et al.,* | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

The central issue in this case is who has the authority to control two financial accounts owned by Dr. Joseph P. Allen ("J.P. Allen") and managed by Brown Investment Advisory & Trust Company ("Brown").[1]  To answer this question, Brown brings claims for interpleader and a declaratory judgment naming J.P. Allen; his brother, David T. Allen ("D.T. Allen"); and his daughter, Elizabeth Key ("Key") as Defendants. (ECF No. 40.)  Key cross-claims, seeking a declaratory judgment against D.T. Allen. (ECF No. 45.)

Four ripe motions to dismiss are pending before this Court.  First, J.P. Allen moves to dismiss Brown's interpleader and declaratory judgment claims against him. (ECF No. 46.)  In three different motions, D.T. Allen moves to dismiss (1) Key's cross-claim against him (ECF No. 47); (2) Brown's claim for interpleader and declaratory judgment against him (ECF No. 54); and

---

[1]     J.P. Allen contends that Brown no longer manages the financial accounts at issue, since he transferred his IRA Account to the custodianship of Wells Fargo and ceded his Joint Cash Account to his wife, Bonnie Allen, in January 2020. (J.P. Allen Mot. Dismiss Brown Am. Compl. Mem. Supp. at 3–4, ECF No. 46-1.)  As this Court has noted, however, J.P. Allen's mental competency to participate in these proceedings remains a central issue in this case (ECF No. 31), and as such, the Court defers consideration of the validity of J.P. Allen's transfers of his accounts pending the outcome of competency proceedings.

(3) Key's defamation claim against him (ECF No. 36 (Civ. No. JKB-19-2922)).[2]  No hearing is required.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons set forth below, consideration of J.P. Allen's motion to dismiss is STAYED pending the outcome of the competency hearing, and D.T. Allen's motions to dismiss are DENIED.

## I.   *Background*

J.P. Allen's IRA Account and Joint Cash Account ("Disputed Accounts") are at the center of this case.[3]  Although Brown initially believed it was the custodian of the Disputed Accounts (*see* Brown Compl. ¶ 1, ECF No. 1), Brown later amended its complaint to indicate that it managed J.P. Allen's accounts as an investment adviser. (*See* Brown Am. Compl. ¶ 1, ECF No. 40.)  In its Amended Complaint, Brown alleges that J.P. Allen designated U.S. Bank as the Qualified Custodian of his Disputed Accounts in 2010. (*Id.* ¶ 17.)  By the same correspondence, J.P. Allen authorized Brown, which has its principal place of business in Maryland, to act on J.P. Allen's instructions to use assets in his Disputed Accounts to pay for monthly living expenses for him and his wife, Bonnie Allen. (*Id.* ¶¶ 2, 16, 17.)  As of July 31, 2019, J.P. Allen's Joint Cash Account contained $5,923.06, and his IRA Account totaled $585,913.20. (*Id.* ¶¶ 11, 18.)

Four of J.P. Allen's purported durable power of attorney ("DPOA") assignments are relevant to the resolution of these motions—two in favor of Key and two in favor of D.T. Allen. (*See id.* ¶¶ 19–22, 34, 76.)  In 2013, J.P. Allen executed a DPOA in Texas naming Key as his attorney-in-fact. (*Id.* ¶ 19.)  The next year, J.P. Allen executed another DPOA in the District of Columbia also designating Key as his attorney-in-fact. (*Id.* at ¶ 22.)  In April 2019, however,

---

[2]     ECF citations including "Civ. No. JKB-19-2922," refer to documents filed in *Key v. Allen*, Civ. No. JKB-19-2922, before it was consolidated with *Brown v. Allen*, Civ. No. JKB-19-2332 (the lead case). (*See* ECF No. 57.) Unless otherwise noted, all other referenced documents were filed in the lead case.

[3]     Brown manages seven accounts pertaining to J.P. Allen and his family, but only his IRA and Joint Cash Accounts are relevant to this dispute. (Brown Am. Compl. ¶ 46, n.2.)

Stuart Weliever ("Attorney Weliever"), a lawyer purporting to represent J.P. Allen, notified Brown that J.P. Allen had executed a new DPOA in Indiana naming D.T. Allen as his attorney-in-fact and "cancell[ing] any prior POA appointments." (*Id.* at ¶ 32 (quoting Brown Am. Compl. Am. Ex. A at ¶ 22, ECF No. 40-3).) Brown also believes that J.P. Allen executed another DPOA in favor of D.T. Allen around September 2019. (*Id.* ¶ 76.)

In its Amended Complaint, Brown alleges that in the same April 2019 letter, Attorney Weliever informed Brown that "JP Allen 'now wishes to resume a role in reviewing his financial affairs, with assistance from D.T. Allen.'" (*Id.* ¶ 37 (quoting Brown Am. Compl. Am. Exs. A at ¶ 27, A-7 at 2).) Attorney Weliever also sought to convene an exclusive meeting about J.P. Allen's accounts with D.T. Allen and J.P. Allen without inviting Key. (*Id.* at ¶ 65.) In December 2019, D.T. Allen sent an invoice to Brown for payment of J.P. Allen's living expenses. (*Id.* ¶ 79.) Brown became concerned, however, when irregularities in the document indicated that the invoice had been edited by D.T. Allen. (*Id.* ¶¶ 80–81.) Due to questions about the authenticity of the invoice, Brown explained in a letter to Defendants' counsel that moving forward, it "could no longer take any instructions from DT Allen as JP Allen's purported attorney-in-fact and would not issue payment for any invoices or expenses from JP Allen's accounts for which DT Allen claimed to have a valid DPOA." (*Id.* ¶ 82 (citing Brown Am. Compl. Ex. R, ECF No. 40-6).)

After Brown brought its Complaint against him for interpleader and declaratory judgment, D.T. Allen did not file any responsive pleading, though he did file an affidavit attached to J.P. Allen's motion to dismiss stating that he "will not be filing an Answer or otherwise asserting any claim" in this action. (J.P. Allen Mot. Dismiss Brown Compl. Ex. 4, ECF No. 7-5.) D.T. Allen further averred that he "will not be asking the Court for any relief," though he has not, to this Court's knowledge, revoked his claim that he is the rightful holder of the DPOA. (*Id.*) D.T. Allen

did, however, file a motion to dismiss Key's initial cross-claim against him, arguing that this Court lacks personal jurisdiction. (D.T. Allen Mot. Dismiss Key Cross-Claim, ECF No. 22.)

When Brown filed its Amended Complaint, Key renewed her cross-claim against D.T. Allen, seeking a declaratory judgment that she is J.P. Allen's rightful attorney-in-fact. (Key Cross-Claim at 16–17, ECF No. 45.) J.P. Allen then moved to dismiss Brown's Amended Complaint. (J.P. Allen Mot. Dismiss Brown Am. Compl., ECF No. 46.) In that motion, J.P. Allen explained that upon learning that Brown was not the custodian of the Disputed Accounts, J.P. Allen "instructed another of his financial advisors, Wells Fargo Advisers ('Wells Fargo'), to request U.S. Bank to transfer the subject Dr. Allen-owned accounts it was holding to Wells Fargo." (J.P. Allen Mot. Dismiss Brown Am. Compl. Mem. Supp. at 4, ECF No. 46-1.)

Once again, D.T. Allen did not file a responsive pleading, but instead attached another affidavit to J.P. Allen's motion to dismiss Brown's Amended Complaint, stating that he "will not be filing an Answer or otherwise asserting any claim" and does not "have any interest in pursuing" his role as a defendant in this case. (J.P. Allen Mot. Dismiss Brown Am. Compl. Ex. 2, ECF No. 46-3.) Thereafter, D.T. Allen, represented by counsel, filed motions to dismiss Key's renewed cross-claim and Brown's Amended Complaint for a lack of personal jurisdiction and Brown's Amended Complaint for failure to state a claim. (*See* D.T. Allen Mot. Dismiss Key Cross-Claim, ECF No. 47; D.T. Allen Mot. Dismiss Brown Am. Compl., ECF No. 54.) D.T. Allen attached an affidavit to his motion to dismiss Key's cross-claim stating that he has "never resided in Maryland, owned property in Maryland, worked in Maryland or knowingly conducted any business on [his] own behalf in Maryland." (D.T. Allen Mot. Dismiss Key Cross-Claim Ex. 1, ECF No. 47-2.)

In the meantime, Key sued D.T. Allen in this District for defamation. (*See* Key Compl., ECF No. 1 (Civ. No. JKB-19-2922).) In Key's Amended Complaint, now the operative pleading,

4

she alleges that D.T. Allen sent defamatory communications into Maryland "in furtherance of his continuing efforts to control [J.P.] Allen's finances." (Key Am. Compl. ¶ 21, ECF No. 32 (Civ. No. JKB-19-2922).) Key alleges that D.T. Allen "emailed, called, and texted Mr. William T. Abell," J.P. Allen's Maryland-based tax accountant, seeking to obtain J.P. Allen's tax returns from 2014 through 2018. (*Id.* ¶ 16.) D.T. Allen told Abell that J.P. Allen had been "maintained in an alcohol and drug-induced haze" and that "[t]he POA was grossly abused in many ways[.]" (*Id.* ¶ 17 (internal quotations omitted).) Additionally, Key alleges that D.T. Allen has contacted employees at Brown "to try and elicit information and documents" about the financial affairs of J.P. Allen, Key, and Key's brother. (*Id.* ¶ 19.) In one such email, D.T. Allen told Alice Paik, a Brown employee based in Texas, that "Joe and Elizabeth have only spoken on the phone a few times in the last two years, and she never comes to visit." (*Id.* ¶ 20 (internal quotations omitted).) In 2019, D.T. Allen also exchanged a series of emails with Melina Selimbegovic, who works in Brown's Chevy Chase, Maryland office. (*See* Key Opp'n D.T. Allen Mot. Dismiss Key Am. Compl. Exs. B–E, ECF Nos. 63-3–63-6.) In one such email, D.T. Allen told Selimbegovic that Key sought to "cover serious financial misdeeds," and as such, Selimbegovic should "continue to pay all bills I submit" for J.P. Allen's care. (Key Opp'n D.T. Allen Mot. Dismiss Key Am. Compl. Ex. B.) While D.T. Allen requested that Selimbegovic withhold payment to a psychiatrist who evaluated J.P. Allen (Key Opp'n D.T. Allen Mot. Dismiss Key Am. Compl. Ex. C), for example, he asked Brown to pay J.P. Allen's American Express bill (Key Opp'n D.T. Allen Mot. Dismiss Key Am. Compl. Ex. E at 2–3).

D.T. Allen moved to dismiss both Key's defamation Complaint and then her Amended Complaint on personal jurisdiction grounds.[4] (*See* D.T. Allen Mot. Dismiss Key Compl. Mem.

---

[4]     Although D.T. Allen's initial motion to dismiss argued that Key's defamation claim failed to state a claim for relief under Rule 12(b)(6) (*see* D.T. Allen Mot. Dismiss Key Compl. Mem. Supp. at § II, ECF No. 19-1 (Civ.

Supp., ECF No. 19-1 (Civ. No. JKB-19-2922); D.T. Allen Mot. Dismiss Key Am. Compl. Mem. Supp., ECF No. 36-1 (Civ. No. JKB-19-2922).) Key's defamation case has since been consolidated with Brown's action for interpleader and declaratory judgment. (*See* ECF No. 57.)

## II. Legal Standards

### A. Standard for Motion to Dismiss for Lack of Personal Jurisdiction

A motion to dismiss under Rule 12(b)(2) is a test of the Court's personal jurisdiction over the defendant. "[W]hen, as here, the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Objections to personal jurisdiction can be waived if they were available to the defendant and not raised in the defendant's first motion to dismiss under Rule 12(b). *See* Fed. R. Civ. P. 12(h).

### B. Standard for Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. An inference of a mere possibility of misconduct is insufficient to support a plausible claim. *Id.* at 679. Rather,

---

No. JKB-19-2922)), D.T. Allen does not renew this claim in his motion to dismiss Key's Amended Complaint, which is now the operative pleading (*see* D.T. Allen Mot. Dismiss Key Am. Compl. Mem. Supp., ECF No. 36-1 (Civ. No. JKB-19-2922).) D.T. Allen's first motion to dismiss was denied without prejudice (*see* ECF No. 30 (Civ. No. JKB-19-2922)).

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss, a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. Analysis

There are currently four ripe motions to dismiss pending before this Court. First, J.P. Allen moves to dismiss Brown's interpleader and declaratory judgment claims for failure to state a claim upon which relief can be granted. (J.P. Allen Mot. Dismiss Brown Am. Compl.) In response, Key alleges that the transfer of J.P. Allen's Disputed Accounts away from Brown's management was "fraudulent" and "an improper attempted end around to avoid the direct issue of JP Allen's Competency." (Key Opp'n J.P. Allen Mot. Dismiss Brown Am. Compl. at 2, ECF No. 48.) Given that J.P. Allen's mental competency to participate in this litigation is still at issue with the relevant expert report and hearing forthcoming (*see* ECF No. 101), the Court is not prepared to consider J.P. Allen's motion to dismiss, which directly implicates his competency. Accordingly, resolution of J.P. Allen's motion to dismiss (ECF No. 46) is stayed pending the outcome of the competency proceedings in this case. As a result, the Court will consider D.T. Allen's three remaining ripe motions to dismiss (1) Key's cross-claim (ECF No. 47), (2) Brown's Amended Complaint (ECF No. 54), and (3) Key's defamation claim (ECF No. 36 (Civ. No. JKB-19-2922)).

D.T. Allen brings Rule 12(b)(2) motions to dismiss all three claims against him for lack of personal jurisdiction (ECF Nos. 47, 54, 36 (Civ. No. JKB-19-2922))[5] and Rule 12(b)(6) motions to dismiss Brown's Amended Complaint for failure to state a claim (ECF Nos. 47, 54). The Court addresses each of D.T. Allen's argued grounds for dismissal in turn and concludes that all claims survive D.T. Allen's motions to dismiss.

### A. *Rule 12(b)(2) Challenges*

D.T. Allen argues that this Court lacks personal jurisdiction over him to hear Key's cross-claim; Brown's interpleader and declaratory judgment claims; and Key's defamation claim. First, the Court considers whether D.T. Allen waived his right to challenge personal jurisdiction. Finding that D.T. Allen has not waived his jurisdictional challenge, the Court considers whether it has personal jurisdiction over each of the claims asserted against D.T. Allen. *See Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 678 (M.D.N.C. 2011) ("When specific jurisdiction is asserted, jurisdiction must be established for each claim alleged."). The Court considers Brown's interpleader and declaratory judgment claims in tandem with Key's cross-claim because Key's cross-claim stems from the same operative facts grounding Brown's Amended Complaint.

### 1. *Waiver*

Objections to personal jurisdiction may be waived by express or implied consent. *CoStar Realty Information, Inc. v. Field*, 612 F. Supp. 2d 660, 668 (D. Md. 2009). Rule 12(h)(1)(A) provides that a party waives his or her defense to personal jurisdiction by "omitting it from a motion in the circumstances described in Rule 12(g)(2)." With exceptions inapplicable to this

---

[5]      D.T. Allen moves to dismiss Key's cross-claim for a lack of personal jurisdiction "pursuant to Federal Rule 12(b)(6)" (D.T. Allen Mot. Dismiss Key Cross-Claim at 1, ECF No. 47), but the Court considers this motion to dismiss under Rule 12(b)(2), which provides for the personal jurisdiction defense.

case, Rule 12(g)(2) mandates a limitation on additional motions under Rule 12(b): "[A] party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." As this Court recognized in *Blank v. Ness*, the combination of these two Rules creates "a 'strict waiver policy' for the defense of lack of personal jurisdiction if not raised in the first motion to dismiss under Rule 12 and if it was available at that time." Civ. No. JKB-16-3735, 2018 WL 1399812, at *2 (D. Md. Mar. 20, 2018) (quoting *Laneheart v. Devine*, 102 F.R.D. 592, 594 (D. Md. 1984)).

Brown asserts that D.T. Allen waived his personal jurisdiction defense by not filing a jurisdictional challenge within the time allowed for responsive pleadings under Rule 12(a).[6] (Brown Opp'n D.T. Allen Mot. Dismiss Brown Am. Compl. at 10–13, ECF No. 56.) Although Brown cites *dicta* to support this argument, *see Brock v. Air & Liquid Sys. Corp.*, Civ. No. 19-314, 2020 WL 977977 (M.D.N.C. Feb. 28, 2020), the Federal Rules do not contemplate waiver of 12(b) defenses simply for missing the deadlines for responsive pleadings set forth in Rule 12(a). *See Hedeen Intern., LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016) (quoting Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1391 (3d ed. 2004) (explaining that this result relies on "an overly strict interpretation of the language of 12(a) and Rule 12(h)(1)") (internal quotations omitted)). D.T. Allen did not file an answer or responsive pleading before challenging personal jurisdiction, and as such, the strict waiver policy is not triggered. *See Warren v. Tri Tech Labs., Inc.*, Civ. No. 12-00046, 2013 WL 6147680, at *3 (W.D. Va. Nov. 22, 2013) (explaining that affidavits do not constitute pleadings under Rule 7(a)). As a result, D.T. Allen has preserved his right to challenge this Court's personal jurisdiction over him.

---

[6]     In this case, D.T. Allen had 60 days to file an answer or responsive pleading because he waived service. *See* Fed. R. Civ. P. 12(a)(1)(A)(ii).

### 2. *Personal Jurisdiction*

Two types of personal jurisdiction exist: general jurisdiction, based upon continuous and systematic activities by a defendant in the state, and specific jurisdiction, premised upon a defendant's contacts with the forum state when the suit arises out of those specific contacts. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). If a plaintiff has made a showing of either type, then personal jurisdiction is established. The evidence in this case does not suggest that D.T. Allen has "continuous and systematic" contacts such that he is "essentially at home" in Maryland, so the Court considers whether it has specific jurisdiction over each of the claims in this case. *Id.* at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Sufficient minimum contacts exist to establish specific jurisdiction where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Where specific jurisdiction exists, the State's jurisdiction is limited to controversies arising from the defendant's activities in the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

"A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). As such, for each of the claims against D.T. Allen, the Court evaluates whether (a) Maryland's long-arm statute confers jurisdiction, and (b) that jurisdiction comports with due process.

### a. *Maryland's Long-Arm Statute*

Courts have consistently held that Maryland's long-arm statute "is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC,* 878 A.2d 567, 576 (Md. 2005). The Maryland Court of Appeals has clarified, however, that this does not mean "that it is now permissible to simply dispense with analysis under the long-arm statute. . . . Rather . . . we interpret the long-arm statute to the limits permitted by the Due Process clause when we can do so consistently with the canons of statutory construction." *Mackey v. Compass Mktg., Inc.,* 892 A.2d 479, 493 n.6 (Md. 2006). "In practical terms, then, the due process limitation defines the outer perimeter of Maryland's long-arm statute, but does not eliminate the need to identify a prong of the statute that appears to confer jurisdiction." *Beyond Sys., Inc. v. Kennedy W. Univ.,* Civ. No. DKC-05-2446, 2006 WL 1554847, at \*4 (D. Md. May 31, 2006).

Maryland Code, Courts and Judicial Proceedings ("CJP") § 6–103 explains under which circumstances a Maryland court has personal jurisdiction over a nonresident defendant. When the long-arm statute provides the sole basis for personal jurisdiction over a defendant, "he may be sued only on a cause of action arising from any act enumerated in this section." CJP § 6-103(a). The statute establishes the following pertinent grounds for jurisdiction:

> (b)   A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > (1)   Transacts any business or performs any character of work or service in the State;
> >
> > \*\*\*
> >
> > (4)   Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

11

CJP § 6–103.

### i.    *Brown's Claims and Key's Cross-Claim*

Even if a defendant has never entered the forum State personally or through an agent, he or she "may be deemed to have 'transacted business' in the State within the meaning of [CJP § 6–103(b)(1)] as long as his or her actions culminate in 'purposeful activity' within the State." *Stisser v. SP Bancorp, Inc.*, 174 A.3d 405, 427–28 (Md. Ct. Spec. App. 2017) (alteration in original) (citation and quotations omitted). Maryland courts have found purposeful activity even where out-of-state defendants were not repeat players in the State. *See, e.g.*, *Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co., Inc.*, 617 A.2d 1125, 1128 (Md. Ct. Spec. App. 1993) (concluding a one-transaction contract with a Maryland corporation); *Sleph v. Radtke*, 545 A.2d 111, 115 (Md. Ct. Spec. App. 1988) (entering into a mortgage in the State). Indeed, a defendant need not even engage in "commerce or transactions for profit" to come within the scope of § 6-103(b)(1) as long as the party's conduct represents purposeful activity in the forum State. *Malinow v. Eberly*, 322 F. Supp. 594, 598 (D. Md. 1971) (internal citations omitted).

With respect to Brown's claims and Key's cross-claim, D.T. Allen is subject to this Court's jurisdiction under CJP § 6–103(b)(1) because he has transacted business in Maryland by directing representatives of Brown to pay bills on behalf of J.P. Allen. Brown and Key collectively point to at least three different instances where D.T. Allen ordered the payment of J.P. Allen's bills by Brown representatives. (*See* Key Opp'n D.T. Allen Mot. Dismiss Brown Am. Compl. Exs. A, D, ECF Nos. 60-1, 60-4; Brown Am. Compl. ¶ 79.) Although D.T. Allen avers that he has never "conducted any business *on [his] own behalf* in Maryland" (D.T. Allen Mot. Dismiss Key Cross-Claim Ex. 1 (emphasis added)), this qualification is immaterial to the application of CJP § 6-

103(b)(1), which does not require personal profit or benefit. As such, § 6-103(b)(1) confers personal jurisdiction over Brown's claims and Key's cross-claim against D.T. Allen.

## *ii.    Key's Defamation Claim*

Subsection (b)(1) does not reach Key's defamation claim because the cause of action in suing for defamation does not arise out of D.T. Allen's business transactions in Maryland, *see* CJP § 6-103(a), but § 6-103(b)(4) is applicable. Subsection (b)(4) requires both that (1) defendant caused a tortious injury in or out of Maryland, and (2) defendant either "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." *See also Greenwood v. Tides Inn, Inc.*, 504 F. Supp. 992, 994 (D. Md. 1980). Maryland courts have not clearly defined the meaning of a "persistent course of conduct," but the Maryland Court of Appeals has acknowledged that the term has "a relatively flexible quality," and as such, it was "meant to be coextensive with the requirements of due process." *Geelhoed v. Jensen*, 352 A.2d 818, 226–27 (Md. 1976). The Fourth Circuit has explained that "a plain reading of" the term indicates that "the contacts resulting from the conduct must be continuous over a long period of time." *Pandit v. Pandit*, 808 Fed. App'x 179, 186–87 (4th Cir. 2020); *see also McLaughlin v. Copeland*, 435 F. Supp. 513, 528 (D. Md. 1977).

This Court has personal jurisdiction over Key's defamation claim against D.T. Allen under § 6-103(b)(4). First, Key has alleged that D.T. Allen caused a tortious injury—defamation— through his actions outside of the State. Second, these allegedly defamatory communications were part of D.T. Allen's persistent course of conduct in Maryland. D.T. Allen specifically sought to create continuous obligations in Maryland, as evidenced by his request in an email to Selimbegovic that she "continue to pay all bills I submit for the care of [J.P.] Allen . . . and send to me for

13

approval any that are recurrent bills that need an approval *for at least the next 6 months*." (Key Opp'n D.T. Allen Mot. Dismiss Key Am. Compl. Ex. B (emphasis added).) As a result, § 6-103(b)(4) confers jurisdiction over Key's defamation claim.

### b. Due Process

Having determined that Maryland's long-arm statute reaches all current claims against D.T. Allen, the Court considers whether jurisdiction over D.T. Allen satisfies due process requirements. The Due Process Clause of the Fourteenth Amendment protects a defendant from having to litigate a claim in a forum where he would not "reasonably anticipate" having to litigate. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). To satisfy due process, a plaintiff must show that a defendant has sufficient minimum contacts with the forum State such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

In evaluating whether the assertion of specific jurisdiction comports with due process, a court must consider "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

The first prong articulates the minimum contacts requirement that the defendant purposely avail itself of the privilege of conducting business within the forum State. *Id.* In analyzing purposeful availment, a court must avoid merely adding up the contacts and comparing them to prior cases; rather, it must focus on the quality and nature of the contacts. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003); *see also CSR Ltd.*

14

*v. Taylor*, 983 A.2d 492, 496 (Md. 2009) (explaining that a defendant establishes minimum contacts when he or she "engaged in significant activities in the State or created continuing obligations with the State's residents, thus taking advantage of the benefits and protections of Maryland law"). With respect to an out-of-state defendant who "enters" the forum State through the Internet, the Fourth Circuit provides that such minimum contacts are sufficient under the Due Process Clause where the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

The second prong of the specific jurisdiction test requires that the defendant's contacts with the forum State form the basis of the suit. *Consulting Eng'rs*, 561 F.3d at 278–79. This inquiry is straightforward. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012) ("Where activity in the forum state is 'the genesis of the dispute,' this prong is easily satisfied.") (quoting *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th 2009)). "[A] plaintiff's claim will 'arise' out of the defendant's activities in the forum state where 'substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim.'" *Ryan v. TEV Corp.*, Civ. No. ELH-18-3852, 2019 WL 5683400, at *8 (D. Md. Nov. 1, 2019) (internal citation omitted).

The third prong permits the Court to consider additional factors to ensure that the exercise of jurisdiction is constitutionally reasonable. These factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining

efficient resolution of disputes; and (5) the interests of the states in furthering
substantive social policies.

*Consulting Eng'rs*, 561 F.3d at 279; *see Crussiah v. Inova Health Sys.*, Civ. No. JKB-14-4017,

2015 WL 7294368, at *5 (D. Md. Nov. 19, 2015) (finding burden on defendant to litigate in

neighboring state was not onerous; plaintiff's interest in convenient relief was countervailing;

and Maryland had an interest in adjudicating a contract dispute between a Maryland resident and

doctors who practice in-state). This third element "ensures that litigation is not 'so gravely

difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to

his opponent.'" *CFA Inst.*, 551 F.3d at 296 (quoting *Christian Science Bd. of Directors of First

Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001)).

### i.    *Brown's Claims and Key's Cross-Claim*

With respect to Brown's interpleader and declaratory judgment claims and Key's cross-

claim, D.T. Allen purposefully availed himself of the privilege of doing business in Maryland.

Starting around January 2019, D.T. Allen allegedly began initiating phone and email

communications with representatives of Brown regarding J.P. Allen's accounts. (*See* Key Opp'n

D.T. Allen Mot. Dismiss Brown Am. Compl. at 11, ECF No. 60.) Although a course of

communications solely dedicated to gathering information about J.P. Allen's accounts would not

constitute purposeful availment, D.T. Allen's series of calls and emails into Maryland specifically

targeted the forum State to control his brother's finances. (*See* Key Opp'n D.T. Allen Mot. Dismiss

Brown Am. Compl. Exs. A, D, ECF Nos. 60-1, 60-4; Brown Am. Compl. ¶ 79.) As such, D.T.

Allen acted with the manifest intent of targeting J.P. Allen's Disputed Accounts, which were

managed in the State. *See ALS Scan*, 293 F.3d at 714.

The second prong of the due process analysis is easily satisfied because D.T. Allen's

"substantial correspondence and collaboration" with representatives of Brown starting in 2019 is

16

central to the dispute over who holds the valid DPOA. *Ryan*, 2019 WL 5683400, at *8 (internal quotations and citation omitted). D.T. Allen's argument that this Court's jurisdiction over him "improperly attributes a plaintiff's forum connections to the defendant" is unavailing. (D.T. Allen Reply Mot. Dismiss Brown Am. Compl. at 9, ECF No. 78 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (internal quotations omitted).) Unlike in *Walden*, where Nevada citizens sued a Georgia defendant in Nevada for an injury that occurred in Georgia, *Walden*, 571 U.S. at 290, D.T. Allen allegedly injured Brown in Maryland as a result of his contacts with Maryland, which constitute a central element of this dispute.

Third, personal jurisdiction over D.T. Allen is constitutionally reasonable. D.T. Allen argues that because his "documents related to this litigation are located in Louisville, Kentucky … it would be a burden to require [D.T.] Allen to travel to Maryland where he has no residence, no contacts, and no access to his documents, to litigate this case." (D.T. Allen Reply Mot. Dismiss Brown Am. Compl. at 10.) D.T. Allen does not explain why litigating in Maryland places him at a severe disadvantage vis-à-vis the other parties to this case, and without analysis of why other relevant factors demonstrate that personal jurisdiction is constitutionally unreasonable, this Court rejects D.T. Allen's objections on this basis. *See CFA Inst.*, 551 F.3d at 296.

### ii.    *Key's Defamation Claim*

Accordingly, the Court moves on to determine whether personal jurisdiction over Key's defamation claim against D.T. Allen is consistent with due process. As for the first prong of the due process analysis, D.T. Allen relies heavily on *Wicklund v. O'Connell*, Civ. No. 95-0008, 1995 WL 421695 (W.D. Va. July 13, 1995) to argue that he does not have the requisite minimum contacts with Maryland for this Court to have jurisdiction over Key's defamation claim. (*See*

D.T. Allen Mot. Dismiss Key Am. Compl. Mem. Supp. at 6–7.) Although it is true that "the jurisdictional analysis must go beyond whether a communication was sent into a state," unlike in that case, D.T. Allen "purposefully directed" his communications into Maryland, where J.P. Allen's accounts were managed, such that he could "reasonably anticipate being haled [*sic*] into court in the recipient state." *Wicklund*, 1995 WL 421695, at *5. In *Wicklund*, by contrast, the defendants' only contact with the forum State was through a legal demand letter sent to the plaintiff's attorney. *Id.* Especially given that the communication "was legal in nature and sent from one attorney to another," the court found that this sole contact did not demonstrate defendants' personal availment of the forum State. *Id.* Here, by contrast, D.T. Allen's defamatory emails purposefully targeted Maryland, where J.P. Allen's accounts were managed, in order to influence authority over the disposition of those accounts. (*See* Key Opp'n D.T. Allen Mot. Dismiss Key Am. Compl. Ex. B.)

The Court is likewise unconvinced by D.T. Allen's arguments that he did not purposefully avail himself of the forum State because he was not aware of Brown's principal place of business and he was acting as J.P. Allen's attorney-in-fact. (D.T. Allen Mot. Dismiss Key Am. Compl. Mem. Supp. at 7–8.) D.T. Allen cites no authority suggesting that a defendant could defeat personal jurisdiction merely by claiming subjective unawareness of the location of the subject matter of a dispute, and indeed to accept such a result would be tantamount to rewarding willful blindness. This is especially true in this case, where D.T. Allen had actual notice of Brown's location in Maryland at least as of August 2019, when he waived service in the present action. Further, even assuming *arguendo* that all of D.T. Allen's Maryland contacts were undertaken pursuant to his role as J.P. Allen's attorney-in-fact, this does not affect the jurisdictional analysis. *See Groom v. Margulies*, 265 A.2d 249, 254–55 (Md. 1970) (explaining

18

that a defendant acting for a disclosed principal is nonetheless subject to personal jurisdiction in
Maryland). As such, the Court finds that D.T. Allen did purposefully avail himself of the forum
State for the purposes of Key's defamation claim.

Second, D.T. Allen's allegedly defamatory emails into the forum State unquestionably
form the basis of the dispute, so this prong is easily satisfied.

As for the third prong, D.T. Allen argues without support that the burden of requiring him
to litigate in Maryland outweighs Brown's "interest in convenience" and that other relevant
factors "do not prop up the plaintiff's reference to emails and phone calls." (*See* D.T. Allen Mot.
Dismiss Key Am. Compl. Mem. Supp. at 8–9.) D.T. Allen does not explain why litigating in
Maryland would be unduly burdensome for him. In fact, many of the factors D.T. Allen
names—including judicial efficiency, Maryland's interest in adjudicating this dispute, and
Brown's interest in convenient relief—weigh in favor of this Court's jurisdiction. *See American
Information Corp. v. American Infometrics, Inc.*, 139 F. Supp. 2d 696, 700–01 (D. Md. 2001)
(internal citation omitted) (listing factors courts may evaluate when a plaintiff only demonstrates
low minimum contacts with the forum State). Accordingly, personal jurisdiction over Key's
defamation claim against D.T. Allen is constitutionally reasonable.

In light of this analysis, Brown and Key have made a *prima facie* showing that D.T.
Allen has sufficient minimum contacts with Maryland to sustain personal jurisdiction over
Brown's interpleader and declaratory judgment claims (ECF No. 40); Key's cross-claim (ECF
No. 45); and Key's defamation claim (ECF No. 32 (Civ. No. JKB-19-2922)). It is neither
unexpected nor unreasonable that after months of communicating with representatives of
Brown—a Maryland-based investment company—regarding Brown's payments from J.P.
Allen's accounts, D.T. Allen should be sued by Brown in Maryland. *See Burger King*, 471 U.S.

at 473 (concluding that when parties "reach out beyond one state" to create continuing

obligations with citizens of another state, they are "subject to regulation and sanctions in the

other State for the consequences of their activities"). At this time, the Court's exercise of

personal jurisdiction over the current claims against D.T. Allen neither violates the long-arm

statute nor due process.

### B.    Rule 12(b)(6) Challenges of Brown's Amended Complaint

D.T. Allen also argues that Brown's interpleader and declaratory judgment actions should

be dismissed on 12(b)(6) grounds in two different motions. (*See* D.T. Allen Mot. Dismiss Key

Cross-Claim Mem. Supp. at 2, ECF No. 47-1; D.T. Allen Mot. Dismiss Brown Am. Compl. Mem.

Supp. at 5–7, ECF No. 54-1.)

First, in D.T. Allen's motion to dismiss Key's cross-claim, he states, "Brown Advisory's

Amended Complaint from which the Cross-Claim flows should be dismissed for mootness and

failure to state a cause of action," as argued in J.P. Allen's motion to dismiss, "which [D.T.] Allen

adopts and incorporates herein." (D.T. Allen Mot. Dismiss Key Cross-Claim Mem. Supp. at 2.)

As previously noted, the Court stays consideration of J.P. Allen's motion to dismiss and declines

to reach the arguments contained therein through D.T. Allen's incorporation by reference.

Second, in his motion to dismiss Brown's Amended Complaint, D.T. Allen contends that

Brown's interpleader and declaratory judgment claims against him "fail[] to make any allegation

against [D.T.] Allen in his individual capacity on which relief can be granted." (D.T. Allen Mot.

Dismiss Brown Am. Compl. Mem. Supp. at 5.) Neither argument is availing. D.T. Allen

mischaracterizes the reasoning of *Morgan Stanley DW, Inc. v. Divel*, which dismissed an

interpleader action as against an alleged former trustee. Civ. No. RDB-05-673, 2006 WL 167707,

at *2 (D. Md. Jan. 23, 2006) ("While Morgan Stanley's Complaint alleges that [the defendant] *was*

a trustee to the trust accounts, it contains no allegation that he *has* a claim, let alone a reasonable claim, to the assets in the trusts.") (emphasis added). Here, although D.T. Allen disclaims a personal interest in J.P. Allen's Disputed Accounts, unlike in *Morgan Stanley*, he continues to claim control over the disposition of those accounts as J.P. Allen's purported attorney-in-fact, which plausibly exposes Brown "to multiple obligations regarding the same funds." *Bucksport Water Sys., Inc. v. Weaver Eng'g, Inc.*, Civ. No. RBH-13-02503, 2013 WL 5914410, at *4 (D. S.C. Oct. 31, 2013).

Additionally, the Court is unconvinced by D.T. Allen's threadbare argument that Brown's declaratory judgment claim "does not make any specific allegations against David Allen in his individual capacity" and does not "state any facts pertaining to David Allen upon which relief could be granted" nor "seek relief against David Allen." (D.T. Allen Mot. Dismiss Brown Am. Compl. Mem. Supp. at 7.)   D.T. Allen's contention is facially untrue; Brown's Amended Complaint for declaratory judgment in part asks this Court to "[d]eclar[e] whether the DT Allen POA is effective" and "enjoin[] Defendants ... from bringing or prosecuting any other action against Brown." (Brown Am. Compl. at 23.)  Without more, D.T. Allen cannot satisfy his burden of proving that Brown fails to state a claim for relief for declaratory judgment. *See Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) (explaining that the party moving for dismissal under Rule 12(b)(6) bears the burden of persuasion).

Accordingly, the Court also denies this motion to dismiss Brown's interpleader and declaratory judgment claims.

21

## *IV. Conclusion*

For the foregoing reasons, an Order shall enter STAYING consideration of J.P. Allen's motion to dismiss pending the conclusion of competency proceedings in this case (ECF No. 46) and DENYING D.T. Allen's motions to dismiss. (ECF Nos. 47, 54, 36 (Civ. No. JKB-19-2922).)

DATED this _29_ day of September, 2020.

BY THE COURT:

James K. Bredar
Chief Judge

22